Good morning. We have the pleasure this morning of having Judge Denise Coate from the Southern District of New York sitting with us, and welcome. So our first case is Gutkowski v. United States Postal Service. Mr. Loftus. May it please the Court, I am Peter Loftus. I represent the appellant David Gutkowski. I would like to reserve five minutes of my time for rebuttal. Mr. Gutkowski was removed from his supervisory position as an EAS 16 in the Postal Service on 3-19-01. He subsequently had a board ruling on 8-28-03 that he'd be given a 90-day suspension and reduced to the next highest, non-supervisory position, which is an EAS 15. Instead, he was placed in a position as a distribution clerk, which is a part-time position, as a PS 5 on 3-29-04. Subsequently, he filed a petition for non-compliance, which during that petition being decided by the Administrative Law Judge, he also filed a motion to accept and consider new evidence. The board, the MSPB board, subsequently remanded the entire matter back to the Administrative Law Judge to consider the new evidence from the time of February 24-04 on for non-compliance. And your contention is that during that time, he should have been offered jobs that the government says were precluded by the collective bargaining agreement. Isn't that the central issue? That's the central issue, yes, Your Honor. And you rely on the earlier non-precedential opinion in the Harvey case. In the Harvey case, which while it was non-precedential, certainly demonstrated very good reasoning. And the court therein, Judge Newman to be specific, stated that the arbitration award in the Snow case does not prohibit the Postal Service from complying with the board order, for the board is the tribunal assigned by statute to review and decide employment disputes. The board can not only rule on these disputes, but also can decide regardless of the regulations. They should follow the regulations obviously, but if they find that there is a discrepancy or something wrong with them, they have the right to go ahead and provide an order and opinion. Same way with an arbitration. So why is it, though, that they shouldn't follow the collective bargaining agreement in determining what's an available position? Your Honor, I submit that the collective bargaining agreement should not trump the court in making a decision. The court is the final tribunal who makes a decision concerning what is fair and what is not fair. And in this case, the fairness situation pertains not only to the collective bargaining agreement, as indicated by the Snow opinion, but also that he should have been placed in an EAS 15. Regardless of whether he was actually in that position, he should have been given the money for the position, since that was the position that he was supposedly going back to. Who was the language of the order that said he had to be given the next highest non-supervisory position? What was the language of the order? I do not have that in front of me, Your Honor. The language basically said that he was given a 90-day suspension and demoted to the next highest non-supervisory position, which without any further statement, to the best of my recollection. So it didn't use the word available position? It did say available position. The situation there is, I submit that the Postal Department is required to make available a position, and that that position should be made available at the quickest period of time. So the question is what's meant by available. Is a position that's barred by the collective bargaining agreement an available position, right? That's what the collective bargaining agreement says. There's no question about that. No, but I mean within the meaning of the order here. The question uses the word available. So the question is, is a position that's barred by the collective bargaining agreement an available position, right? I understand what the Court is saying, but I would submit that the available position is any EAS 15 position which would be available at that time or any subsequent time, which there have been demonstrations by the evidence presented by the union's representative that there were available EAS 15 positions that could have been filled. Those are both plausible interpretations of the word available. The government says available means it has to be available under the collective bargaining agreement. You say no, it just means available in terms of open positions within the Postal Service. How do we know which of those interpretations is correct? Well, I think you get into a situation there as to which trumps who. I submit that the Board's decision trumps the collective bargaining agreement as much as it trumps an arbitration and that the collective bargaining agreement should not be construed to displace the Board's opinion or to avoid the Board's opinion, which in this case I submit that the Postal Service has done. And deliberately done. Now he subsequently was put into the position of an EAS 11, an unsupervised position, on February 2nd, 2005, which was roughly 20 days after he had submitted his new evidence and requested that noncompliance be based upon the new evidence, but they still had not come up with EAS 15. The evidence that has been produced by the Postal Service tries to explain away why he has not. Either it was outside the 50 mile radius or the EAS 15 positions that were available would have put him in a supervisory position where he supervised one other member of the Postal Service. There have been shown, however, in the evidence that there were other EAS 15s and it was a question of notice and whether he had been placed on sufficient notice of these positions that he would be allowed to bid on. They unilaterally had made the decision that they would not give him a position outside the 50 mile radius, yet they never notified him to give him the opportunity to say, well, I've changed my mind, I want to go outside the 50 mile radius. And it is our position that under the situation that we have here, it is very similar to the Harvey situation. I might point out that in the one case... The 50 mile radius argument is a different argument than the collective bargaining. That's correct, that's correct. So why do they have to ask him about jobs outside the 50 mile radius when he said that that's all he's interested in? I think that it is necessary to provide the individual with sufficient notice so that he can make a specified, specific decision as to whether or not the position is acceptable to him. The reason that he would have that opportunity is because it may be in a more desirable location within the area, not the 50 mile area, but within Pennsylvania, which would allow him or cause him to move there for better living conditions, etc. So it should be available to him to be able to reject or accept any position that arises within the park. The situation here is that the board remanded it for the situation and said that it was a second non-compliance petition to begin from February 24, 2004 and move forward from there. Yet the postal service still has not given any chance to take an EAS 15 position. The postal authorities have raised the issue of collateral estoppel. However, in the collateral estoppel, we have a situation where it is clearly defined that this is a non-compliance petition that went forward from 2-24-04 when his original petition was filed back in October of 2003. It was still pending at the time that the board made the decision to start a second petition. So it was not a collateral estoppel because the October 3, 2004 petition only covered the preceding period of time and not the subsequent period of time. In the situation where you have non-compliance continuing, it is a new case each and every time and you cannot rely upon a decision going back before the violations of subsequent periods. And these were new violations subsequent to that period of time. Did you introduce any evidence of particular jobs that were at higher levels that were available at the time that they put Mr. Gutowski into the PS-5 position? Because PS-5 seems to me relatively low, you know, given that he was coming off of a 15. It seems to me, I mean, couldn't there have been anything at all in between a 5 and a 15 to put him in? I mean, to take him out of a 15 and put him in a part-time 5 seems like a pretty big stretch. Did you introduce evidence of any specific jobs apart from the collective bargaining ones that he would have been appropriate for, meaning non-supervisory, that would have complied with the order that were higher than PS-5? I was not the attorney at the time. Another attorney had preceded me. However, Mr. Zielinski, who was a union representative, did provide an affidavit listing innumerable situations where there were available positions that he was not offered or even given notice of. But did he distinguish in that list, I mean, wasn't that just a printout of sort of all available positions? It didn't suggest which ones were potentially barred by collective bargaining, which ones were supervisory versus non-supervisory. I mean, there were conditions upon Mr. Gutowski's new placement. And so were there specific ones on that list that were identified that he would have been eligible for that complied completely with all the circumstances and weren't subject to the problems of the collective bargaining agreement? In reviewing the file, I could not determine that there were. This is a situation where I believe the postal authorities were in a position that they knew which ones weren't, yet did not notify the appellant in this particular case. Is the problem here that the vast majority of the non-supervisory positions are covered by the collective bargaining agreement? That is true. There's no question about that. There are three non-supervisory positions which are enumerated within the Judge Stevens' order that, for one reason or another, were not given or noticed to the appellant. And those three were jobs which apparently he had indicated previously he would not have been interested in, but they still did not give him sufficient notice to give him an opportunity to reject these. Does the record show what percentage of the non-supervisory jobs were covered by the collective bargaining agreement? No, I don't believe it does. I don't think there's a percentage given any place on the record. Thank you. Mr. Donahue? May it please the Court? If I could clarify something in response to Judge Moore's question as to the types of jobs that were available and what the postal service obligations were in that regard. The reason Mr. Gutkowski was placed in a part-time PS-5 position was because he was initially placed in a union position, and those positions are governed exclusively by the collective bargaining agreement. Because he had to be initially placed in a union position, his placement in that union position was determined solely by seniority, which is why he had to go to the bottom of the totem pole as far as union positions. It was then incumbent on the postal service… Wait, so the PS-5 was a position governed by the collective bargaining agreement? Yes, it was. So he was able to be put into a PS-5 position which is governed by collective bargaining, but he's not able to be put in a 12, 11, 15 governed by collective bargaining? Well, that's the distinction I wanted to make. There are two classes of jobs. The 11, 12, and 15 that Petitioner's Counsel is referring to are not union positions. They're EAS positions. They're management or just non-union. They're not all management positions, but they're not covered by the collective bargaining agreement. And why wasn't he put directly into one of those instead of a PS-5? Because at the time that the decision came down from the board to reduce his removal to a demotion, there were no EAS positions available for which he was qualified that did not require supervision of a postal employee. There was nothing higher than a 5. I mean, that's just… there's a lot of positions between 5 and 16 where he was, and I'm just having trouble believing there's nothing between 5 and 16 that met the criteria. I guess what I need to explain is that levels 5 to 10, for example, are covered by the collective bargaining agreement. All the jobs in those levels? Correct. So basically you're saying that all those jobs are unavailable to him? From 6 to 10, yes, because he has to have seniority greater than other people. And many of the jobs that say 15, 14 involve supervision, so you've got a huge percentage of those that wouldn't be available to him. So when you take all those jobs off the table, you're saying the only thing left was this part-time 5 position, because he didn't demand part-time, right? It wasn't that he had a disability or otherwise needed the part-time. He was willing to come back full-time into the best position you could provide for him. That's correct. And what the board law places the obligation on the Postal Service to do when the penalties change is to initially put him back to work in whatever position you have for him, the highest level that you have. And the highest level at the time was a PS5. The Postal Service then has a continuing obligation to place him in a higher-level position for which he's qualified and fits the criteria of the board's order when it becomes available. And that's exactly what happened here when, in April of 2005, an EAS11 position that didn't require supervision of any employees became available, and Mr. Gokowsky was immediately placed in that position. Suppose hypothetically we had a situation in which every job, every non-supervisory job for which he would be eligible was covered by the Collective Bargaining Agreement. Does that mean that he doesn't get any job offer at all? It would mean that he would have to be placed at the lowest-level union position for which he had seniority, which is the PS5 position. So you're saying he can be put in a collective bargaining position, he just has to go to the lowest one available. Correct, because of his seniority. The Collective Bargaining Agreement ties the Postal Service hands in that regard. We can't place him without the union's agreement into a higher-level position over somebody else who has more seniority. We have to place him... Even when the board orders you to do so. The board is held, and there's a lot of case law in this, the Postal Service or any agency is now required to violate a Collective Bargaining Agreement in order to comply with one of its orders. So if the highest level under the Collective Bargaining Agreement, they can place him in as a PS5. They do that temporarily, and then the intention of the board order is to place him in an EAS position, a non-union position. So when that becomes available, the Postal Service obligation is to place him in that position and take him out of the low-level union position that it had originally assigned him to. Are we dealing with any statute or regulation here, or are we simply construing a board order which directs that he be put in the next highest available non-supervisory position? We're construing the board's order, but we also have to do that while noting the obligations the Postal Service has under the Collective Bargaining Agreement. I understand, but in terms of the position that's available to him, there's no regulation that specifies that under these circumstances that somebody has to be placed in the next highest non-supervisory position. That's just solely a function of the board's order. That's correct, and the AJ that decided here to give Mr. Gakowsky a demotion to the next highest non-supervisory level position also decided later in the decision that's now on appeal before this court that the Postal Service was not obligated to violate its collective bargaining obligations in order to place him in a higher-level union position. And what it was required to do was to place him in the higher-level EAS positions so long as it didn't require supervisory of any other employees when it became available, and that is what happened here. So I guess what you're arguing is that since we're construing the board's order and the word available in the board's order, and since the board has consistently said that it doesn't mandate violation of the Collective Bargaining Agreement, available has to be cabined so that it doesn't cover collective bargaining positions. That's correct. So what you have potentially here is a situation in which the board purports to grant some relief but doesn't really grant any relief at all. There is that possibility, Your Honor, hypothetically. However, the Postal Service is always in these cases able to place somebody in the lowest-level union position, meaning they're not going to be completely out of work. And in most of these cases, as happens a lot, they then have to wait for the EAS positions, which are not as abundant as obviously the union positions, to become available and take them out of that low-level union position they were required to put them in at least initially and put them in that higher-level position when they become available. But that took years, didn't it, in this case? And, you know, Mr. Gutowski, maybe he has a mortgage and a family and everything else. He went from a 16 to a part-time 5, not even a full-time. And what happened here, Your Honor, and I'm a little constrained by the record because all of this is part of the record, is part of the first petition for enforcement. But when Mr. Gutkowski was initially offered the part-time flexible position, he asked for a leave, and that's part of the reason why we have the lag time here. He was initially offered the part-time flexible position. He turned it down and requested instead to take leave so he could attend to other business interests that he had developed. And it was only after the board finally decided that the Postal Service was in compliance with its previous or its first petition for enforcement that Mr. Gutkowski accepted the job in 2004. And then after that, the Postal Service, within a year, had placed him in an EAS position when it became available. I know that the circumstances of the initial order are not directly before us, but as I understood it, he was given this opportunity to continue with employment with the Postal Service, though in a non-supervisory position, as really an alternative determination. Am I correct? So on one hand, he faced losing all rights to continue health care benefits and the opportunity for his pension to accumulate, with the opportunity to continue with employment with the Postal Service, albeit under the conditions that are the subject of this appeal. That's absolutely correct, Your Honor. And I think on that issue, the board's order, which was a removal for slapping a subordinate employee, my understanding was that charge was upheld. It's just that the board decided that Mr. Gutkowski should be allowed to keep some sort of position with the Postal Service, so long that he did not supervise any other employees. He wasn't responsible for overseeing employees, given the nature of what he was charged with. Are the higher-level positions not covered by the collective bargaining agreement all situations in which the postmaster is in small towns? Is that basically what it is? That's not exclusively true, Your Honor, but those are probably the most common EAS positions in an area such as the Central Pennsylvania District, where you have a small enough town where an EAS position is not supervising someone. There are higher-level EAS positions that don't require supervision, however. In this particular district, where you just have the kind of nuts-and-bolts operation of the Postal Service, most of those jobs are going to be in small towns where you don't have to supervise employees underneath you. If there are no other questions, I see the clerk. Oh, I'm sorry. I think there was some reference earlier in this oral argument to a list of positions that wasn't very differentiated, but it was a list and it's in the record. Am I correct that that list covers a period before March of 2004? There are two lists. The one that Petitioner's Counsel referred to was a list that was provided by Mr. Zielinski, who was a union representative, and he provided a list of available union jobs from 2001 to 2003, which is why the Postal Service made appointments briefed. Even if that evidence is considered, it's in advance of the question before the Board, which is subsequent to 2004, were there higher-level positions available? And the only thing that Mr. Zielinski's declaration did, even if it were timely in terms of the question before the Board, is identify available union positions. It didn't necessarily identify higher-level union positions. It didn't say which positions would have been available to Mr. Krakowski under the Collective Borrowing Agreement. It simply gave a list of union positions that were available. And that was responded to as part of the first petition for enforcement by the Labor Relations Manager at the Postal Service, who explained to the Board that those positions either weren't available for, or pretty much they weren't available under the Collective Borrowing Agreement for various reasons. If there are no other questions, I'm happy to rest on Bruce. Okay, thank you. I have no further remarks. Okay, thank you very much. Case is submitted.